## UNITED STATES COURT OF INTERNATIONAL TRADE
### BEFORE: UNASSIGNED

| | |
|---|---|
| U.S. GLASS PRODUCERS COALITION<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>        Defendant. | **Court No.:  25-00058** |

## <u>COMPLAINT</u>

The U.S. Glass Producers Coalition ("GPC" or "Plaintiff"), by and through their counsel, allege and state as follows:

## <u>ADMINISTRATIVE ACTION TO BE REVIEWED</u>

1.    Plaintiff seeks judicial review of negative material injury and threat of material injury determinations of the U.S. International Trade Commission (the "Commission") in the antidumping investigations of *Glass Wine Bottles from China and Mexico*.  Plaintiff contests certain factual findings and legal conclusions that resulted in the Commission's final negative injury and threat of material injury determination. *See Glass Wine Bottles from China and Mexico*, 90 Fed. Reg. 10,515 (Int'l Trade Comm'n Feb. 24, 2025). The determination and views are contained in *Glass Wine Bottles from China and Mexico*, Inv. No. 731-TA-1662-1663 (Final), USITC Pub. 5588 (Feb. 2025) ("Final Determination" or "USITC Pub. 5588").

## JURISDICTION

2.     This action is brought pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(ii).  This Court has jurisdiction over this action to review the Commission's final determination as it applies to China pursuant to 28 U.S.C. § 1581(c), which confers the Court exclusive jurisdiction over civil actions under 19 U.S.C. § 1516a.

3.     Petitioner also intends to challenge the Commission's final determination as it applies to Mexico, which is a party to the United States-Mexico-Canada Agreement ("USMCA"), and provided timely notice of their intent to commence judicial review of the Commission's final determination accordingly on March 11, 2025, pursuant to 19 U.S.C. § 1516a(g)(3)(B) and the Rules of Procedure for USMCA Article 10.12 Binational Panel Reviews.

4.     The statute's provision of exclusive jurisdiction for binational panel review of determinations applicable to USMCA countries does not apply to China.  This Court therefore has jurisdiction over this action to review the Commission's final determination as it applies to these countries pursuant to 28 U.S.C. § 1581(c), as this action is commenced under Sections 516A(a)(2)(A)(i)(I) and B(ii) of the Tariff Act of 1930, *as amended*, 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and (a)(2)(B)(ii).

## STANDING OF THE PARTIES

5.     Plaintiff is a Coalition consisting of Ardagh Glass Inc. and the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union (the "USW").  Ardagh is a U.S. producer of glass wine bottles, and the USW is a union representing workers at the production facilities of the known domestic producers of glass wine bottles, which include Ardagh's factories in Seattle, Washington;

Madera, California; and Port Allegany, Pennsylvania as well as O-I Glass, Inc.'s factories in Kalama, Washington and Tracy, California. Plaintiff participated in the investigation and is an interested party as described in Section 771(9)(F) of the Tariff Act of 1930, as amended, 19 U.S.C. § 1677(9)(F). As Petitioner below, Plaintiff was also party to the investigation that led to the determination being challenged herein. Accordingly, Plaintiff has standing to bring this action under 19 U.S.C. § 1516a(d) and 28 U.S.C. § 2631(c).

## **TIMELINESS OF THIS ACTION**

6.  On February 24, 2025, the Commission published in the Federal Register its determination that the domestic industry was not materially injured or threatened with material injury in the antidumping investigations of *Glass Wine Bottles from China and Mexico*. *See Glass Wine Bottles from China and Mexico*, 90 Fed. Reg. 10,515 (Int'l Trade Comm'n Feb. 24, 2025). The U.S. Glass Producers Coalition timely filed a Notice of Intent to Commence Judicial Review with the USMCA Secretariat on March 11, 2025. The Summons commencing this action was timely filed with this Court on March 24, 2025 (*see* ECF 1), pursuant to 19 U.S.C. §§ 1516a(a)(2)(A)(i)(I) and U.S.C.I.T Rules 3(a)(2) and 6(a).

7.  This Complaint is filed within the time specified in 19 U.S.C. § 1516a(a)(2) and 28 U.S.C. § 2636(c), having been filed within 30 days of the filing of the Summons.

## **STATEMENT OF CLAIM**

8.  The Commission's negative injury determination with respect to glass wine bottles sold at less than fair value from China and Mexico is unsupported by substantial evidence on the record and otherwise not in accordance with the law as averred in Counts I through XXXIII set forth herein.

## HISTORY OF THE CASE

9.     On December 29, 2023, Plaintiff filed Petitions alleging that certain glass wine bottles (hereinafter "wine bottles") imported from the People's Republic of China ("China"), the United Mexican States ("Mexico"), and Chile are being or are likely to be sold at less than normal value ("LTNV") within the meaning of section 731 of the Tariff Act of 1930, *codified as amended at* 19 U.S.C. § 1673 (hereinafter, "The Tariff Act").  Plaintiff further alleged that wine bottles imported from China are subsidized within the meaning of section 701 of the Tariff Act, *codified as amended* at 19 U.S.C. § 1671.

10.    On January 5, 2024, the Commission published the institution of the antidumping investigations and countervailing duty investigations in *Glass Wine Bottles from Chile, China and Mexico.  See Glass Wine Bottles from Chile, China, and Mexico*, 89 Fed. Reg. 809 (Int'l Tade Comm'n Jan. 5, 2024). The Commission held a staff conference on January 19, 2024, and the parties filed Post-Conference Briefs on January 24, 2024.

11.    On February 12, 2024, the Commission reached a preliminary determination that there is a reasonable indication of material injury by reason of glass wine bottles from Chile, China and Mexico that were alleged to be sold in the United States at less than fair value and by imports of the subject merchandise that were alleged to be subsidized by the government of China. *See Glass Wine Bottles from Chile, China and Mexico*, 89 Fed. Reg. 12,380 (Int'l Trade Comm'n Feb. 16, 2024). The preliminary views of the Commission were set forth in *Glass Wine Bottles from Chile, China and Mexico*, Inv. Nos. 701-TA-703 and 731-TA-1661-1663 (Prelim.), USITC Pub. 5493 (Feb. 2024).

12.    On March 12, 2024, the Commission released draft U.S. producer, U.S. purchaser, importer and foreign producer questionnaires. *See* Letter from Nanette Christ to Counsel (March 12, 2024).

13.    On April 19, 2024, the U.S. Glass Producers Coalition submitted Comments on the Draft Questionnaires. Petitioner's Comments on Draft Questionnaires, *Certain Glass Wine Bottles from Chile, China, and Mexico*, Inv. Nos. 701-TA-703 and 731-TA-1661-1663 (Final) (April 19, 2024) (hereinafter "Petitioner's Comments on the Draft Questionnaires"). Petitioner submitted that, in the preliminary phase, the Commission did not collect data regarding the prices at which importers/distributors purchase subject imports. Petitioner urged the Commission to collect purchasing cost data of the importers/distributors as to both bulk and case packs in order to achieve an apples-to-apples comparison. *Id.* at 1-2. The Petitioner submitted that, in order to compare the price competition in the market, the Commission must collect sale prices from U.S. producers to distributors but also collect the acquisition costs of importer/distributors for their imported products. *Id.* at 3. Petitioner submitted that "{t}his comparison would capture the comparable prices to distributors of purchasing the domestic like product and the price of subject imports prior their resale at marked-up prices to end users by distributors." *Id.* Petitioner submitted that the appropriate comparison for sales from the largest U.S. producers to the largest purchasers (*i.e.*, distributors) is the U.S. producer's price, valued f.o.b. U.S. point of shipment, and the import AUV, value landed, duty-paid. *Id.* at 6. The Commission ultimately collected this data as requested for pricing products 6, 7 and 8, which are pricing products that were bulk products. The Commission did not collect this information for case packed products. *See Final U.S. Importers' Questionnaire* at III-3.

5

The fact that the Commission did not collect this information for case packed products impacted the reliability of the underselling analysis of pricing products 1 through 5 such that the only reliable underselling analysis is for pricing products 6, 7 and 8.

14.     In advance of the final phase hearing, the U.S. Glass Producers Coalition submitted a Prehearing Brief on August 8, 2024.  Petitioner's Prehearing Brief, *Glass Wine Bottles from Chile, China, and Mexico*, Inv. Nos. 701-TA-703 and 731-TA-1661-1663 (Final) (Aug. 8, 2024) (hereinafter "Petitioner's Prehearing Brief"). The Prehearing Brief addressed several issues of importance, the first of which is directly related to the Commission's decision to collect the import value, landed, duty-paid for the pricing products 6, 7 and 8 that represent wine bottles imported in bulk but not for the pricing products imported in case packs. Petitioner submitted that the underselling analysis of pricing products 6, 7 and 8 was carried out using the appropriate point of comparison, which was a comparison of sales from the largest U.S. producers to the largest purchasers (distributors) with the import value, landed, duty-paid. Petitioner's Prehearing Brief at 43-44. This data was not collected for pricing products 1 through 5, which are the pricing products imported in case packs. *Id.* at 44, 48-49.  Petitioner explained in its Prehearing Brief that underselling for pricing products 6, 7 and 8 showed significant and increasing underselling in the latter half of the POI; underselling shown in the last five quarters of the POI (Q1 2023 through Q1 2024) for pricing products 6, 7 and 8. *Id.* at 44-45.

15.     Another important issue that was addressed in the Prehearing Brief was related to price suppression and price depression.  Regarding price suppression, it was submitted that the U.S. producers' total cost of goods sold ("COGS") as a percentage of net sales increased throughout the POI from 2021 through 2023 and through the interim period from interim

2023 through interim 2024. *Id.* at 40. In addition to discussing underselling, regarding price depression, the Prehearing Brief also highlighted that the price of glass wine bottles did not increase to the extent that would have been necessary in an inflationary environment given that the U.S. Producer Price Index ("PPI") increased by 30.4 percent. *Id.* at 41.

16. Petitioner also argued in its Prehearing Brief that there was considerable evidence of lost sales and lost revenues in the record, both collected by the Commission and submitted by the parties, that proved a causal connection between lower priced subject imports and negative effects for the domestic industry. *Id.* at 56-58.

17. Petitioner also submitted in its Prehearing Brief that 2021 was an aberrational year due to the COVID-19 pandemic and the corresponding global supply chain disruption. *Id.* at 3. However, between 2022 and 2023, Petitioner submitted that, based on the data provided in the Prehearing Report and the merchant market, the share of subject imports in the market increased with a further increase observed in interim 2024. *Id.*

18. With respect to threat, Petitioner also provided details regarding a large inventory overhang in the U.S., with U.S. producers' ratio of inventories to shipments increasing over the POI. *Id.* at 71. In addition, Petitioner submitted that foreign inventories also increased from interim 2023 through interim 2024 with the foreign ratio of subject imports to import shipments growing as a ratio to subject production and shipment. *Id.* In addition, it was submitted that arranged imports were high and that subject imports were surging on a relative basis in the first quarter of 2024. *Id.* Petitioner submitted that all of these factors indicate that the domestic industry will be harmed in the absence of trade relief. *Id.* at 72. Concerning adverse impact, Petitioner submitted that the domestic industry was in a "death spiral" and was highly vulnerable to further injury from unfairly traded subject imports.

*Id.* at 70, 77. The term death spiral can refer to the elimination of a manufacturer's products which will result in spreading the fixed manufacturing overhead costs to fewer products. *Id.* at 77.

19.    On August 14, 2024, the Commission held its final phase hearing, and on August 23, 2024, the U.S. Glass Producers Coalition submitted its Post-Hearing Brief. *See* Petitioner's Post-Hearing Brief, *Glass Wine Bottles from Chile, China, and Mexico*, Inv. Nos. 701-TA-703 and 731-TA-1661-1663 (Final) (Aug. 23, 2024) (Hereinafter "Petitioner's Post-Hearing Brief"). Petitioner's Post-Hearing Brief again addressed the existence of underselling for pricing products 6, 7, and 8, demonstrating that the majority of subject imports in the pricing data undersold the domestic product in 2023 and that the ratio increased in 2024. Petitioner's Post-Hearing Brief at 1. The Post-Hearing Brief addresses the market share increases of subject imports at the cost of the domestic industry based on shipments data from the questionnaire responses. *Id.* at 5. Among other topics, Petitioner's Post-Hearing Brief discussed the cost-price squeeze as demonstrated by increasing COGS as a percentage of net sales and also discussed the causal connection between subject impots and the cost-price squeeze, the massive inventory overhang, and the fact that Ardagh was forced to curtail its production at its Seattle plant. *Id.* at 2, 6-14.

20.    On August 26, 2024, the U.S. Department of Commerce ("Commerce") issued its Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances in *Certain Glass Wine Bottles from the People's Republic of China. See Certain Glass Wine Bottles from the People's Republic of China: Final Affirmative Countervailing Duty Determination and Final Affirmative Determination of Critical Circumstances*, 89 Fed. Reg. 68,395 (Dep't Commerce Aug. 26, 2024).

21.     Commerce's final determinations in the antidumping investigations for all three subject
countries, including China, Chile, and Mexico, were extended. *See Certain Glass Wine
Bottles from the People's Republic of China: Preliminary Affirmative Determination of
Sales at Less Than Fair Value, Preliminary Affirmative Determination of Critical
Circumstances, in part, and Postponement of Final Determination and Extension of
Provisional Measures*, 89 Fed. Reg. 65,331 (Aug. 9, 2024); *Certain Glass Wine Bottles
from Chile: Preliminary Affirmative Determination of Sales at Less Than Fair Value,
Postponement of Final Determination, and Extension of Provisional Measures*, 89 Fed.
Reg. 65,325 (Aug. 9, 2024); *Certain Glass Wine Bottles from Mexico: Preliminary
Affirmative Determination of Sales at Less Than Fair Value, Preliminary Negative
Determination of Critical Circumstances, Postponement of Final Determination, and
Extension of Provisional Measures*, 89 Fed. Reg. 65,317 (Aug. 9, 2024).

22.     Commerce did not postpone the investigations for the China countervailing duty decision,
and the investigation schedules thus became staggered, resulting in an earlier decision in
the final phase China countervailing duty investigation.

23.     The Commission's confidential Final Staff Report was dated September 6, 2024. Final
Staff Report to the Commission, *Glass Wine Bottles from Chile, China and Mexico*, Inv.
Nos. 701-TA-703 and 731-TA-1661-1663 (Final) (Sept. 6, 2024).

24.     On September 17, 2024, Petitioner submitted its September 2024 Final Comments in the
countervailing duty investigation, which included comments on the Final Staff Report.
Petitioner's Final Comments, *Certain Glass Wine Bottles from Chile, China, and Mexico*,
Inv. Nos. 701-TA-703 and 731-TA-1661-1663 (Final) (Sept. 17, 2024) (hereinafter
"Petitioner's September 2024 Final Comments").  Among other submissions, Petitioner's

September 2024 Final Comments pointed out that a significant change in the Final Staff Report confirms that subject imports gained market share at the direct expense of the domestic industry for the last two-and-a-quarter years of the POI. *Id.* at 2. Petitioner also submitted that the Commission should consider this trend in conjunction with an acknowledgment that 2021 was an aberrational year such that greater probative value should be placed on the gain in subject import market share over the last two-and-a-quarter years of the POI. *Id.* at 3. In addition, Petitioner submitted that, based on the Final Staff Report, even greater underselling can be observed in pricing products 6, 7 and 8. *Id.* at 5. Petitioner also discussed the prevalence of confirmed lost sales and the evidentiary strength of the indicators of those confirmed lost sales. *Id.* at 8-10.

25.    On October 16, 2024, the Commission released its final determination that the domestic industry was not materially injured or threatened with material injury in the *Glass Wine Bottles from China* countervailing duty investigation. *See Glass Wine Bottles from China*, 89 Fed. Reg. 83,515 (Oct. 16, 2024).

26.    The GPC filed an appeal of the Commission's negative material injury and negative threat of material injury with the U.S. Court of International Trade and that appeal is related to this case. *See* Complaint, *U.S. Glass Producers Coalition v. United States*, No. 24-00199 (Nov. 26, 2024, U.S. Ct. Int'l Trade).

27.    While the Commerce antidumping investigations of China, Mexico and Chile were still ongoing, on December 10, 2024, Petitioner submitted a letter withdrawing the antidumping Petition with respect to Chile. *See Glass Wine Bottles from Chile: Termination of Less-Than-Fair Value Investigation*, 89 Fed. Reg. 106,425 (Dep't Commerce Dec. 30, 2024). On December 30, 2024, the Department of Commerce published a notice in the Federal

Register of the termination of the subject investigation concerning glass wine bottles from Chile, and the Commission then published a notice in the Federal Register when it terminated its antidumping investigation of glass wine bottles from Chile. *Id.*; *See also Glass Wine Bottle from Chile, Termination of Investigation*, 90 Fed. Reg. 1,543 (Final) (Int'l Trade Comm'n Jan. 8, 2025).

28. On January 2, 2025, Commerce published a notice in the Federal Register determining that certain glass wine bottles from China were being or are likely to be sold in the United States at less than fair value for the period of investigation on April 1, 2023 through September 30, 2023. *See Certain Glass Wine Bottles from China: Final Affirmative Determination of Sales at Less Than Fair Value and Final Affirmative Determination of Critical Circumstances, in Part*, 90 Fed. Reg. 76 (Final) (Dep't Commerce Jan. 2, 2025).

29. Also on January 2, 2025, Commerce published a notice in the Federal Register determining that imports of certain glass wine bottles from Mexico are being, or are likely to be, sold in the United States at less than fair value for the period of investigation of October 1, 2022 through September 30, 2023. *See Certain Glass Wine Bottles from Mexico: Final Affirmative Determination of Sales at Less than Fair Value and Final Negative Determination of Critical Circumstances*, 90 Fed. Reg. 79 (Final) (Dep't Commerce Jan. 2, 2025).

30. The China and Mexico investigations were considered trailing antidumping duty investigations and the record of the investigations closed on September 13, 2024, except that Commerce's final antidumping duty determination of subject imports from China and Mexico and the parties' Final Comments were added to the record. *See Glass Wine Bottles from Chile, China and Mexico*, Inv. Nos. 701-TA-703 and 731-TA-1661-1663 (Final),

USITC Pub. 5588, 4 (Feb. 2025). The record from Commerce's Chile antidumping investigation was not considered in the Commission's final determination in the antidumping investigation of *Glass Wine Bottles from China and Mexico*.

31. In addition to Commerce's final antidumping duty determination on subject imports from China and Mexico, the Commission also considered the parties' Final Comments with respect to those investigations. *Id.* at 5. The GPC and several parties filed supplemental final comments and reply comments. *See* Petitioner's Final Comments, *Certain Glass Wine Bottles from China, and Mexico*, Inv. Nos. 731-TA-1661-1663 (Final) (Jan. 13, 2025); Petitioner's Erratum to Final Comments, *Certain Glass Wine Bottles from China and Mexico*, Inv. Nos. 731-TA-1662-1663 (Final) (Jan. 23, 2025); Petitioner's Reply Final Comments, *Certain Glass Wine Bottles from China and Mexico*, Inv. Nos. 731-TA-1662-1663 (Final), (Jan. 17, 2025).

32. Petitioner's January 13, 2025 Final Comments address the significance of Commerce's termination of the antidumping duty investigation of glass wine bottles from Chile. *See* Petitioner's Final Comments, *Certain Glass Wine Bottles from China, and Mexico*, Inv. Nos. 731-TA-1661-1663 (Final) (Jan. 13, 2025).

33. In its January 13, 2025 Final Comments, the GPC submitted that decumulation of Chinese and Mexican subject imports for the purpose of a threat analysis would be appropriate. *Id.* at 1, 3.

34. Among the factors that were specifically set forth by the GPC as supporting decumulation for the purpose of a threat analysis were the following: the volume trends for Mexico and China are different because the market share of subject imports from Mexico increased throughout the 2021 to 2023 period of investigation and the market share for China

decreased during the 2021 to 2023 period of investigation; in the interim 2023 period to the interim 2024 period, subject imports from Mexico increased on an absolute basis and subject imports from China decreased on an absolute basis; price trends for Mexico and China are fundamentally different with subject imports from Mexico being "predominantly higher priced" than glass wine bottles from other subject sources and with observable differences between the pricing trends of the products; purchasers have different views as to the comparability of subject imports from Mexico and the U.S. domestic like product versus the comparability of subject imports from China with the U.S. domestic like product; there are differences in the channels of distribution; and there are differences stemming from the fact that subject imports from China were subject to section 301 tariffs which had affected supply of those imports. *Id.* at 2-5.

35.    The GPC submitted that the termination of the Chile investigation significantly impacts the market share analysis as to Mexico because cumulated subject imports decreased in market share over the three-year period yet, based on the Final Staff Report and in the merchant market, the Mexican market share increased from 2021 to 2023 and from interim 2023 to interim 2024. *Id.* at 6. When pricing products one through five are examined in interim 2024, the data demonstrates that Mexico undersold when examining comparisons but also in the vast majority of volumes. *Id.* at 6-7. At the same time, U.S. producers lost market share in the merchant market. *Id.* at 8. The GPC submitted that this is notable because, in the China CVD Views, the Commission pointed to declining demand as an alternative cause of injury – yet, Mexican imports increased in market share in a time of declining demand. *Id.* at 9. The GPC also noted that Mexican arranged imports were higher than Chinese and Chilean arranged imports, and that Mexican imports are poised to continue

their surge into the market based on Mexican producers' capacity data, which reflects increased capacity between 2021 and 2023 and when interim 2023 was compared to 2024. *Id.* at 10.  Mexican capacity utilization also decreased over the POI.  *Id.*

36.    A decumulated analysis of China indicates an increased market share over interim 2023 to interim 2024 period.  *Id.*  at 11.  In addition, a decumulated threat analysis with Chile removed indicates that China undersold the domestic like product in pricing products 6 through 8  by volume in certain comparisons.  *Id.* at 12.

37.    Finally, GPC's January 2025 Final Comments also addressed cumulated threat based on cumulated Chinese and Mexican subject imports.  After the termination of the Chile investigation and based on the data provided in the Final Staff Report in the merchant market, Mexican and Chinese cumulated subject imports' market share increased from 2021 to 2024.  *Id.* at 12.  The price effects of underselling and price suppression are born out in confirmed lost sales and in the fact that more than one in four purchasers confirmed buying subject imports primarily due to price.  *Id.* at 13.  In addition, in contrast to Chile, both China and Mexico evidenced capacity expansions such that, by excluding Chile, it is clear that practical wine bottle capacity in Mexico increased from 2021 to 2023 and from interim 2023 to interim 2024 and practical wine glass capacity increased in China from interim 2023 to interim 2024.  *Id.* at 14.  In addition, Mexican and Chinese producers are expected to increase their wine bottle production in 2025.  *Id.*  The GPC also submitted that the domestic industry is in a vulnerable position, with declining demand, imports from China and Mexico increasing their market share, and U.S. shipments declining in interim 2023 to interim 2024 by more than the decrease in demand and net sales also decreased by

more than demand with particularly pronounced deterioration in the merchant market.  *Id.* at 15.

38.    On January 17, 2025, Petitioner submitted Reply Final Comments, arguing that Chilean subject imports were not eligible for cumulation due to Commerce's termination of the Chile investigation as they are no longer subject imports and rebutting Respondents' arguments that Chinese and Mexican subject imports cannot cause material injury or threat of material injury with Chilean imports now excluded from the analysis due to their new status as non-subject imports.  Petitioner's Reply Final Comments, *Certain Glass Wine Bottles from China and Mexico*, Inv. Nos. 731-TA-1662-1663 (Final), 5 (Jan. 17, 2025).  Petitioner's Reply Final Comments focused on the fact that, in the Commission's determination in the countervailing duty investigation of *Glass Wine Bottles from China*, the volume of imports were found to be significant but the Commission determined that there was no "nexus" between the three cumulated subject imports and the deteriorating performance of the domestic industry, and that the removal of Chilean imports, which were masking the causal connection, makes the nexus between the non-subject imports from China and Mexican and material injury clearer.  *Id.* at 5.  Petitioner also submitted that Chile's decreasing market share detracted from overall market share changes of subject imports in the *Glass Wine Bottles from China* CVD investigation.  *Id.* at 6.  Petitioner submitted that, with only China and Mexico as subject imports, subject imports increased over the interim period and that their market share was higher at the end of the POI in 2024 than at the beginning of the POI in 2021.  *Id.* at 8-9.

39.    Petitioner submitted in its Reply Final Comments that Chile's inclusion as a subject country also obscured the correlation between underselling and subject import market gain.

*Id.* at 7.   Among other submissions on underselling, the Petitioner submitted that "with Chile excluded, Chinese and Mexican underselling at the end of the POI occurred while subject imports were not only gaining market share but reached their highest market share of the POI." *Id.*  Petitioner also indicated that, "with a focus on just Mexico and China, the causal connection is clearer: there is an increase in market share at the time that imports are significantly underselling." *Id.* at 7-8.  In addition, Petitioner submitted that, with Chile excluded, there is uncontroverted evidence of Mexican (the largest and growing share of subject imports) prices falling over the POI, which, combined with underselling, meant that subject imports captured market share in 2024 as a result. *Id.* at 9.  COGs as a percentage of net sales also increased between interim 2023 and interim 2024. *Id.* Petitioner also submitted that Mexican subject imports, in addition to increasing on a relative basis, also increased on an absolute basis. *Id.* at 10.

40.   Finally, Petitioner addressed the impact of decreases in demand on the deterioration of the health of the domestic industry, submitting that the record is clear that the deterioration in the health of the domestic industry was far greater than any decrease in demand. *Id.* at 9-10.  The following indicia were cited in support of this conclusion: gross profit decreased over the three-year period, and subject imports gained market share in 2024 as compared to 2023, and the domestic industry lost market share in 2024 as compared to 2023, and U.S. shipments by quantity and volume, net sales by quantity, net sales by value, capital expenditures, and hours worked all decreased. *Id.* at 9-10.

41.   On January 23, 2025, the GPC submitted an erratum to its Final Comments, which related to the decumulated Mexico analysis and corrected a statement made regarding the percentage of imports in 2023 that were in pricing products 1 through 5. *See* Petitioner's

Erratum to Final Comments, *Certain Glass Wine Bottles from China, and Mexico*, Inv. Nos. 731-TA-1661-1663 (Final) (Jan. 23, 2025). This misstatement, when corrected, did not change the substance of the submissions described above in the January 13, 2025 Final Comments. *Id.* at 3.

42. On February 4, 2025, the Commission voted to reach a negative material injury and threat of material injury in *Certain Glass Wine Bottles from China and Mexico*, which was later published in the Federal Register. *See Glass Wine Bottles from China and Mexico*, 90 Fed. Reg. 10,515 (Feb. 24, 2025). The Commission's determination and views are contained in *Glass Wine Bottles from China and Mexico*, Inv. No. 731-TA-1662-1663 (Final), USITC Pub. 5588 (Feb. 2025) ("Final Determination" or "USITC Pub. 5588").

## COUNT I

43. Paragraphs 1 through 42 above are realleged and incorporated herein by reference.

44. The Commission's finding that the significant volume of imports, both by absolute volume and relative to consumption in the United States, did not have significant price effects or a significant adverse impact on the domestic industry, is not supported by substantial evidence and is otherwise contrary to law.

## COUNT II

45. Paragraphs 1 through 44 above are realleged and incorporated herein by reference.

46. The Commission's determination regarding the significance of overselling by subject imports in the pricing product data is unsupported by substantial evidence and is otherwise contrary to law.

## COUNT III

47. Paragraphs 1 through 46 above are realleged and incorporated herein by reference.

48.  The Commission's underselling analysis was not supported by substantial evidence and is otherwise contrary to law.

## COUNT IV

49.  Paragraphs 1 through 48 above are realleged and incorporated herein by reference.

50.  The Commission's failure to meaningfully address known flaws in the pricing product data renders its price effects decision not supported by substantial evidence and otherwise contrary to law.

## COUNT V

51.  Paragraphs 1 through 50 above are realleged and incorporated herein by reference.

52.  The Commission's failure to address arguments and evidence of price depression is not supported by substantial evidence and is otherwise contrary to law.

## COUNT VI

53.  Paragraphs 1 through 52 above are realleged and incorporated herein by reference.

54.  The Commission's determination that subject imports did not have significant price suppressing effects on the domestic industry is not supported by substantial evidence and is otherwise contrary to law.

## COUNT VII

55.  Paragraphs 1 through 54 above are realleged and incorporated herein by reference.

56.  The Commission's determination regarding the lost sales and lost revenue evidence, including the contemporaneous business communications demonstrating purchasers buying subject imports due to lower prices and that such information did not detract from the other record evidence is not supported by substantial evidence and is otherwise contrary to law.

**COUNT VIII**

57. Paragraphs 1 through 56 above are realleged and incorporated herein by reference.

58. The Commission's determination that the deterioration of the health of the domestic industry was commensurate with, and allegedly therefore due to, declines in apparent domestic consumption is not supported by substantial evidence and is otherwise contrary to law.

**COUNT IX**

59. Paragraphs 1 through 58 above are realleged and incorporated herein by reference.

60. The Commission's determination that there is no causal relationship between the subject imports and harm to the domestic industry is not supported by substantial evidence and is otherwise contrary to law.

**COUNT X**

61. Paragraphs 1 through 60 above are realleged and incorporated herein by reference.

62. The Commission's determination that subject imports do not threaten the domestic industry with material injury is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XI**

63. Paragraphs 1 through 62 above are realleged and incorporated herein by reference.

64. The Commission's analysis failed to address material evidence and material arguments by the parties and is therefore not supported by substantial evidence and contrary to law. Examples of the Commission failing to address material evidence and arguments of the parties include that 2021 was an aberrational year which was distorted by COVID-19 and the global supply chain crisis.

## COUNT XII

65.     Paragraphs 1 through 64 above are realleged and incorporated herein by reference.

66.     The Commission failed to address material evidence and material arguments regarding the causal connection between subject imports and the curtailment of the Seattle manufacturing plant and as such its determination is not supported by substantial evidence and contrary to law.

## COUNT XIII

67.     Paragraphs 1 through 66 above are realleged and incorporated herein by reference.

68.     The Commission's determination that there is no threat of material injury is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XIV

69.     Paragraphs 1 through 68 above are realleged and incorporated herein by reference.

70.     The Commission's decision not to decumulate subject imports from China and Mexico in its threat analysis is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XV

71.     Paragraphs 1 through 70 above are realleged and incorporated herein by reference.

72.     The Commission's determination in its threat analysis regarding the likely volume of cumulated subject imports from China and Mexico is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XVI

73.     Paragraphs 1 through 72 above are realleged and incorporated herein by reference.

74.     The Commission's determination in its threat analysis regarding the likely price effects of cumulated subject imports from China and Mexico is not supported by substantial evidence and is otherwise contrary to law.

20

## COUNT XVII

75.    Paragraphs 1 through 74 above are realleged and incorporated herein by reference.

76.    The Commission's determination regarding the impact of cumulated subject imports from China and Mexico is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XVIII

77.    Paragraphs 1 through 76 above are realleged and incorporated herein by reference.

78.    The Commission's determination that found no causal connection between the domestic industry's financial performance in all three calendar years of the POI and subject imports is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XIX

79.    Paragraphs 1 through 78 above are realleged and incorporated herein by reference.

80.    The Commission failed to examine material evidence and material arguments that the domestic industry entered the period of investigation in an injured state and its determination is therefore not supported by substantial evidence and is otherwise contrary to law.

## COUNT XX

81.    Paragraphs 1 through 80 above are realleged and incorporated herein by reference.

82.    The Commission's determination regarding market share shifts by subject imports during 2021 through 2023, between the 2023 to 2024 interim periods, and between 2021 and 2024 as not indicative of material injury is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XXI

83.    Paragraphs 1 through 82 above are realleged and incorporated herein by reference.

84.    The Commission's determination that inventory levels were not indicative of injury to the domestic industry is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XXII**

85.    Paragraphs 1 through 84 above are realleged and incorporated herein by reference.

86.    The Commission's cumulation for threat analysis is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XXIII**

87.    Paragraphs 1 through 86 above are realleged and incorporated herein by reference.

88.    The Commission's decision not to decumulate subject imports from China and Mexico in the trailing antidumping investigations with respect to its threat determination is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XXIV**

89.    Paragraphs 1 through 88 above are realleged and incorporated herein by reference.

90.    Because the Commission decided not to decumulate subject imports from China and Mexico in the trailing antidumping investigations, the Commission failed to consider that, based on the data from the Final Staff Report, that the Mexican market share increased from 2021 to 2023 and from interim 2023 to interim 2024 and therefore its threat determination is not supported by substantial evidence and is contrary to law.

**COUNT XXV**

91.    Paragraphs 1 through 90 above are realleged and incorporated herein by reference.

92.    Because the Commission decided not to decumulate, the Commission failed to consider that Mexican subject imports undersold in a significant percentage of comparisons and in

the vast majority of volumes in interim 2024 and therefore its threat determination is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XXVI

93.    Paragraphs 1 through 92 above are realleged and incorporated herein by reference.

94.    Because the Commission decided not to decumulate, the Commission failed to consider that Chinese subject imports increased their market share over the period of interim 2023 to interim 2024 and therefore its threat determination is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XXVII

95.    Paragraphs 1 through 94 above are realleged and incorporated herein by reference.

96.    The Commission's finding that the increase in cumulated Mexican and Chinese subject imports from 2021 to 2024, as well as other facts in the record including arranged imports, inventory ratios, and an increase in practical wine glass capacity in China between interim 2023 and interim 2024 and in Mexico between 2021 and 2023 and again between interim 2023 and interim 2024, do not indicate that there is a likelihood of a significant increase in cumulated subject imports in the imminent future absent relief is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XXVIII

97.    Paragraphs 1 through 96 above are realleged and incorporated herein by reference.

98.    The Commission's determination that market share trends of cumulated subject imports from China and Mexico do not indicate that there is a likelihood of a significant increase in cumulated subject imports in the imminent future absent relief given the data provided in the Staff Report indicating that, in the merchant market, subject imports' market share

increased from 2021 to 2024 is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XXIX

99.  Paragraphs 1 through 98 above are realleged and incorporated herein by reference.

100.  The Commission's determination regarding subject producers' export orientation as to glass wine bottles to the United States is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XXX

101.  Paragraphs 1 through 100 above are realleged and incorporated herein by reference.

102.  The Commission's determination regarding likely price effects of subject imports in its cumulated threat analysis with regard to Chinese and Mexican subject imports including its failure to consider that, in 2024, Mexico was underselling the U.S. industry in pricing products 1 through 5 while China was underselling in pricing products 6 through 8, is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XXXI

103.  Paragraphs 1 through 102 above are realleged and incorporated herein by reference.

104.  The Commission's decision that declines in production and shipments, which resulted in declining financial performance, was wholly unrelated to subject import competition is not supported by substantial evidence and is otherwise contrary to law.

## COUNT XXXII

105.  Paragraphs 1 through 104 above are realleged and incorporated herein by reference.

106.  The Commission's determination that the domestic industry is not vulnerable is not supported by substantial evidence and is otherwise contrary to law.

**COUNT XXXIII**

107.  Paragraphs 1 through 106 above are realleged and incorporated herein by reference.

108.  The Commission's determination that subject imports are not likely to have a significant adverse impact in its threat analysis is not supported by substantial evidence and is otherwise contrary to law.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

(1)  hold that the negative final material injury and negative threat *Final Determinations* by the Commission with respect to the antidumping investigations of *Glass Wine Bottles from China and Mexico* are unsupported by substantial evidence and otherwise not in accordance with the law;

(2)  remand the *Final Determination* to the Commission with instructions to correct the errors set forth in this Complaint; and

(3)  grant such other relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Daniel B. Pickard*
Daniel B. Pickard, Esq.
Amanda L. Wetzel, Esq.
Claire M. Webster, Esq.

**BUCHANAN INGERSOLL & ROONEY PC**
*Counsel to U.S. Glass Producers Coalition*

Dated: April 22, 2025